NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

VIOLETTE WHITNEY JOSEPH,

    Plaintiff,

v.

THE STATE OF NEW JERSEY CIVIL SERVICE COMMISSION, *et al.*,

    Defendants.

Civil Action No. 10-3956 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    Plaintiff Violette Whitney Joseph, an African-American female, alleges that she suffered unlawful discrimination and other wrongs at the hands of her current employer, the State of New Jersey Civil Service Commission ("CSC"), and its predecessor agency, the State of New Jersey Department of Personnel ("DOP"). In this action, she pursues claims against the CSC and several former DOP officials (collectively, "Defendants"), alleging various forms of employment discrimination, breach of contract, and intentional infliction of emotional distress.

    Now before the Court is Defendants' motion for summary judgment on all of Plaintiff's claims. (Defs.' Mot., ECF No. 51.) Plaintiff filed opposition to the motion (Pl.'s Opp'n, ECF No. 52), and Defendants replied (Defs.' Reply, ECF No. 56.) The Court has carefully considered the parties' submissions and decided the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, and for other good cause shown, Defendants' motion is granted.

I. **Background**

   A. **Summary of Plaintiff's Claims**

The Court begins with an overview of Plaintiff's allegations. Unless otherwise noted, the following narrative is drawn from the Complaint.

Plaintiff accepted a temporary position at the DOP in March 2004 with the understanding that she would be appointed to a permanent civil service position at the conclusion of a six-month probationary period. (Compl. ¶¶ 1, 9, 44.) The permanent appointment never materialized. Instead, Plaintiff claims that Defendants appointed her to a series of temporary or provisional positions to prevent her from obtaining a permanent civil service title. (*Id.* at ¶¶ 12, 16, 18, 31.) At the same time, Plaintiff was shouldering new responsibilities as a result of staff reductions stemming from a multi-year "restructuring" of the DOP that began in late 2005. (*Id.* at ¶¶ 18, 25.) Despite repeated requests from Plaintiff and her immediate supervisor, the DOP's management failed to appoint Plaintiff to a permanent position with a civil service classification that was commensurate with her duties and responsibilities. (*Id.* at ¶¶ 13, 16, 20, 23, 24, 31, 33.) The imbalance persisted after Plaintiff's unit became part of the Department of Treasury in 2009.[1] (*Id.* at ¶ 33.)

Plaintiff claims that two Caucasian males whom the DOP hired within a few months of her received permanent appointments. (*Id.* at ¶ 19.) William Linhart, originally hired into the DOP, received a permanent position as a Planning Associate in another state agency. (*Id.*) Frank Girard, who began working at the DOP six months before Plaintiff, received a permanent appointment as a Supervising Education Development Specialist in Plaintiff's unit. (*Id.*)

---

[1] According to Defendants, the New Jersey legislature dissolved the DOP in early 2009, dividing its functions between the CSC and the Department of Treasury. (Defs.' Reply 7). In the Complaint, Plaintiff identifies the CSC as the DOP's "successor agency" (Compl. ¶ 2) but also makes repeated references to the Treasury (*id.* at ¶¶ 33, 34). As a result, it is not clear which agency Plaintiff worked for following the dissolution of the DOP.

Plaintiff alleges that she has acted as project manager for the "statewide implementation of a Learning Management System" since August 2007. (*Id.* at 25.) In this role, she has supervised two Caucasian employees, Dave Smith and Holly Fisher, whose salaries were "significantly" higher than her own. (*Id.* at ¶¶ 27, 37.) Plaintiff also alleges that Smith was assigned to an office that was larger than her own, and that Smith and Foster both received better office equipment and IT support than Plaintiff. (*Id.* at ¶¶ 34, 41.)

The charging section of Plaintiff's Complaint contains twelve claims. Counts One, Two, and Eleven are based on New Jersey state law theories of implied contract and intentional infliction of emotional distress. In Counts Three through Ten, Plaintiff accuses Defendants of race, color and gender discrimination under namely the Federal Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 59:8-3 *et seq.* Count Twelve apparently seeks to enjoin the Defendants from further acts of retaliation against Plaintiff.

**B.  Material Facts**

In accordance with Local Civil Rule 56.1(a), Defendants submitted a Statement of Undisputed Material Facts ("SUMF") with their motion for summary judgment. (SUMF, ECF No. 51-4.) Plaintiff failed to submit a responsive statement. Accordingly, the Court treats each properly-supported fact in Defendants' submission as undisputed unless Plaintiff cites contrary evidence in her opposition brief. *See Longoria v. New Jersey*, 168 F. Supp. 2d 308, 312 & n.1 (D.N.J. 2001). The facts in this case are as follows.

In March 2004, Plaintiff accepted a temporary appointment to a position in the Human Resource Development Institute ("HRDI"), a division of the DOP tasked with training

3

government employees. (SUMF ¶¶ 2-3, 6.) Plaintiff's position carried the title "Supervising Program Development Specialist" and an annual salary of $59,431.85. (*Id.* at ¶ 4.) In June, William Linhart joined HRDI as an "Education Program Specialist" with a starting salary of $69,861.16. (*Id.* at ¶ 23; Defs.' Mot., Exh. L.) After approximately six months, Linhart left the DOP for another agency, where he became Planning Associate. (SUMF ¶ 25.) Plaintiff remained at HRDI, where her salary increased steadily, rising to $61,155.37 in June 2004, $63,919.39 in March 2005, and $65,198.33 in June 2005. (*Id.* at ¶ 11; Pl.'s Opp'n, Exh. 20.)

In 2005, budget cuts forced HRDI to downsize and restructure its workforce. (SUMF ¶¶ 7-8.) As part of this process, Plaintiff was appointed to the title of "Contract Administrator 2" in August 2005. (*Id.* at ¶¶ 9, 15.) The appointment was "pending open-competitive examination," which meant that Plaintiff would not be eligible for permanent status until she took a publically announced civil-service examination. (*Id.* at ¶ 10; Exh. G). To prevent a reduction in Plaintiff's income—she was then earning $18,000 more than the Contract Administrator 2 pay range allowed—HRDI "red circled" Plaintiff's salary. (SUMF ¶¶ 12-13.) As a result, Plaintiff's salary remained fixed at $65,198.33 until December 2006, when it increased to $65,409.96. (Pl.'s Opp'n, Exh. 20.)

In February 2007, Plaintiff submitted a written complaint to DOP Commissioner Rolando Torres, Jr. (SUMF ¶ 16; Pl.'s Opp'n, Exh. 7.) In it, Plaintiff asserted that the DOP's failure to appoint her and her colleague, Wanda McNeill, to permanent positions violated the terms of "oral agreement[s]" made at the time both women were hired. (*Id.*) The complaint made no reference to race, color or gender. (*See id.*)

Plaintiff's employment status changed again in July 2007, when HRDI moved her to the unclassified title of "Government Representative 3" and increased her salary to $67,372.19.

(Pl.'s Opp'n, Exh. 20.) At around the same time, Plaintiff became project manager for the "Learning Management System" or "LMS." (SUMF ¶ 18.) In this role, Plaintiff supervised Dave Smith, a Supervising Training Technician who had worked for the DOP since 1986, and Holly Foster, an Administrative Analyst who joined HRDI in 1993. (*Id.* at ¶¶ 19-21; 34-36). In June 2008 and June 2009, Plaintiff applied for and received two "salary adjustment[s]" of $3,935.50 and $2,301.20, respectively. (*Id.* at ¶¶ 31-32; Pl.'s Opp'n, Exh. 24.) These payments reflected the additional responsibilities Plaintiff had acquired with regard to the LMS project. (SUMF ¶ 31.)

Plaintiff's title and salary remained unchanged when she and her remaining HRDI colleagues were reassigned to the New Jersey Department of Treasury in early 2009. (*Id.* at ¶ 38.)

## II. Legal Standard

Summary judgment is appropriate if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986). In evaluating the evidence, the Court is "required to view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted). However, where the party opposing summary judgment ultimately bears the burden of proof as to a dispositive issue, that party "bears the burden of production under Rule 56 to 'designate specific facts showing that there is a genuine issue for trial.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

## III. Analysis

### A. Federal Equal Pay Act Claim

A burden-shifting analysis applies to claims under the Federal Equal Pay Act ("EPA"). *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000). First, the claimant must demonstrate that employees of the opposite sex were paid differently to perform "'equal work'—work of substantially equal skill, effort and responsibility, under similar working conditions." *Id.* (quoting *E.E.O.C. v. Delaware Dept. of Health and Soc. Svcs.*, 865 F.2d 1408, 1413-14 (3d Cir. 1989)). Once claimant has made this prima facie showing, the employer must establish a gender-neutral basis for the disparity in its workers' salaries. *Stanziale*, 200 F.3d at 107 & n.6; *see* § 206(d)(1) (providing that an employer may escape liability if the disparity in its employees' wages is based on seniority, merit or "any other factor other than sex").

In this case, it is undisputed that Plaintiff earned less than at least two male HRDI employees. (Defs.' Br. 28-29.) To shift the burden to Defendants, then, Plaintiff need only present evidence that the tasks Plaintiff performed were substantially equal to those assigned her better-compensated male coworkers. *See Heller v. Elizabeth Forward Sch. Dist.*, 182 F. App'x 91, 94 (3d Cir. 2006); *Dubowsky v. Stern, Lavinthal, Norgaard & Daly*, 922 F. Supp. 985, 990 (D.N.J. 1996) ("The main determining factor in the substantial equality of the jobs is whether the jobs involve a common core of tasks.") (internal quotation marks omitted). Here, Plaintiff falls short of her burden.

Although Plaintiff makes general assertions about her job function—claiming, for instance, that her duties were "consistent" with those associated with more desirable job titles (Pl.'s Opp'n 16)—she fails to provide a factual basis for a comparison of her duties to those of her male colleagues. In short, the record before the Court furnishes only the vaguest impression

6

of the work Plaintiff actually performed. *See Brobtst v. Columbus Svcs. Int.*, 761 F.2d 148, 155 (3d Cir. 1985) (stating that "relevant issue" under the EPA "is not the name under which [a] position was classified but what [work] was actually done"). In the absence of this information, no rational factfinder could conclude that Defendants violated the EPA. Accordingly, Defendants are entitled to summary judgment on Count Seven of the Complaint.

### B. Status-Based Discrimination & Retaliation Claims

The Court now turns to Plaintiff's allegations of status-based discrimination and retaliation under Title VII and NJLAD. The same analysis applies to the federal and state law claims. *See Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 498 (3d Cir. 1999) ("Analysis of a claim made pursuant to the NJLAD generally follows analysis of a Title VII claim."). The Court will therefore divide the claims into two groups. The first consists of Plaintiff's charges of race, color and gender discrimination, that is, Counts Three, Four, Five, Eight and Nine of the Complaint. The Court will then examine Plaintiff's retaliation claims in Counts Six and Ten.

It is undisputed that the three-stage analysis illustrated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to all of these claims. *See Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006) (applying *McDonnell Douglas* framework to Title VII retaliation claim); *Stanziale*, 200 F.3d at 105 (applying *McDonnell Douglas* framework to Title VII status-based discrimination claim). At the first stage, claimant bears the burden of establishing a prima facie claim of employment discrimination. *See McDonnell Douglas*, 411 U.S. at 802-03. At the second stage, employer must produce evidence that, if believed, would establish a legitimate, nondiscriminatory explanation for its treatment of claimant. *See id.* at 804-05. If employer meets this burden, claimant must then submit evidence sufficient to convince a reasonable factfinder that employer's explanation is a pretext for intentional discrimination or retaliation. *See id.*

7

1. **Discrimination Claims**

The Court's analysis of Plaintiff's status-based discrimination claims begins and ends with the first step of the *McDonnell Douglas* analysis. A prima facie claim of employment discrimination consists of evidence from which a rational jury could conclude (1) the claimant is a member of a protected class; (2) he or she was qualified for the position sought; (3) he or she suffered an adverse employment action; and (4) the action occurred "under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

Defendants contend that Plaintiff cannot establish an adverse employment action because she continues to be employed and has received periodic increases in both her salary and job responsibilities. (Defs.' Br. 17-21.) Plaintiff does not dispute these facts. (Pl.'s Opp'n 9, 16.) However, she claims Defendants "demoted" her three times during the first four years of her employment at the DOP—in April 2004, August 2005, and March 2008—and that these demotions supply the adversity element of her prima facie claim. (Pl.'s Opp'n 8-9.)

At the outset, the Court notes that there is no question that "employment decisions such as transfers and demotions may suffice to establish the third element of a plaintiff's prima facie case." *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 411-12 (3d Cir. 1999). It is, however, equally clear that the prima facie analysis imposes "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema NA*, 534 U.S. 506, 510 (2002). In other words, Plaintiff must do more than assert that Defendants demoted her; she must also present evidence to substantiate this claim. This she fails to do.

Plaintiff's claim that she was demoted in April 2004 is wholly unsubstantiated. She asserts, with no citation to the record, that Defendants "reduced [her] from a grade 30 position to

a grade 29 position" in April 2004. (Pl.'s Opp'n 9.) Plaintiff's failure to identify evidence supporting this claim indicates that no such evidence exists. *DeShields v. Int'l Resort Props. Ltd.*, 463 F. App'x 117, 120 (3d Cir. 2012) ("If factual support for [a] claim exist[s] in the record, it [is] incumbent upon [party opposing summary judgment] to direct the District Court's attention to those facts."). Moreover, even if Plaintiff produced this evidence, the Court would have no basis to conclude that a "grade" reduction constitutes "action . . . [that is] 'serious and tangible enough to alter a [Plaintiff's] compensation, terms, conditions, or privileges of employment.'" *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)).

The remaining two instances in which Plaintiff claims to have been "demoted" occurred in August 2005, when Defendants changed her title to "Contract Administrator 2," and in March 2008, when she received the "Government Representative 3" title. While it is undisputed that Plaintiff's title changed, there is no evidence that these changes had any adverse impact on the "terms, conditions, or privileges of [Plaintiff's] employment." *Id.* In fact, the evidence is to the contrary—Plaintiff acknowledges that her salary and responsibilities have only increased since she began working at the DOP in 2004. Under these circumstances, no rational factfinder could conclude that Defendants subjected Plaintiff to an adverse employment action. As a result, Plaintiff has not established a prima facie case of employment discrimination.

Plaintiff's failure to satisfy her initial burden obviates the last two steps of the *McDonnell Douglas* analysis. The Court observes, however, that Plaintiff also fails to rebut the non-discriminatory motivation proffered in Defendants' papers. (Defs.' Br. 23-25.) Defendants produce evidence tying the changes in Plaintiffs' title to the large reduction in HRDI's staff that occurred during the "restructuring" of the DOP. (*Id.*) Plaintiff does not deny the staff cuts, but

9

apparently suspects that at least some of her former colleagues transferred into better positions than the one she now occupies at the CSC. (Pl.'s Opp'n 12.) Plaintiff fails, however, to "point to some evidence" that could persuade a rational factfinder to share these suspicions. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Thus, even if Plaintiff's succeeded in establishing a prima facie case of discrimination, her claim would fail at the third-step of the *McDonnell Douglas* analysis.

Accordingly, Defendants are entitled to summary judgment on Counts Three, Four, Five, Eight and Nine of the Complaint.

### 2. Retaliation Claims

Plaintiff also claims that Defendants retaliated against her after she voiced concerns about workplace discrimination. Once again, Plaintiff's retaliation claims under NJLAD and Title VII are subject to the same analysis. To make out a prima facie claim, claimant must produce evidence from which a jury could conclude "(1) she engaged in protected activity; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore*, 461 F.3d at 340-41 (internal quotation marks omitted). The term "adverse employment action" is broader in the context of a retaliation claim. To satisfy her burden, Plaintiff need only show that Defendants did something to her that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Moore*, 461 F.3d at 341 (quoting *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

With respect to the first element, Plaintiff alleges that she voiced the issue of discrimination to her superiors as early as mid-2005. (Pl.'s Opp'n 15.) Although this claim finds little support in the record—the earliest memoranda and e-mail messages cited in Plaintiff's

papers date back to February 2007 (Pl.'s Opp'n, Exhs. 7 & 22)—the Court will accept it for purposes of its analysis.

Plaintiff claims the August 2005 and March 2008 changes in her job were retaliatory demotions aimed at discouraging her from raising the issue of discrimination. The Court rejects this assertion. Even in the retaliation context, the alterations in Plaintiff's job title—unaccompanied by a change in the terms and conditions of Plaintiff's employment or a tangible diminution in her status within the organization—do not constitute "adverse employment actions." Plaintiff also alleges that Defendants' supposed "denial" of her June 2, 2009 request for a salary adjustment was retaliatory. (Pl.'s Opp'n 16.) The evidence Plaintiff herself relies upon, however, shows that Defendants *approved* her June 2009 request for a salary adjustment. (*See* Pl.'s Opp'n, Exh. 24.) Thus, it appears that the outcome of Plaintiff's request was anything but adverse.

In the absence of proof that Defendants subjected Plaintiff to an adverse employment action, Plaintiff has failed to establish a prima facie case of retaliation under either state or federal law. Defendants are therefore entitled to summary judgment on Counts Six and Ten of the Complaint.

## C. Common Law Breach of Contract and Tort Claims

Defendants assert they are entitled to summary judgment on Plaintiff's common law contract and tort claims because Plaintiff failed to provide the notices required under New Jersey's Contractual Liability Act, N.J. Stat. Ann. § 59:13-5, and Tort Claims Act, N.J. Stat. Ann. § 59:8-3. (Defs.' Br. 9-10, 14-16.) Plaintiff has not opposed this portion of Defendants' motion. The Court has reviewed evidence proffered in support of Defendants' motion and concluded that summary judgment is appropriate. *See* Fed. R. Civ. P. 56(e)(3) (where motion is

unopposed, "the court may order . . . summary judgment if the motion and supporting materials . . . show that the movant is entitled to it"); *Ventura v. Montclair State Univ.*, No. 08-5792, 2011 WL 550720, at *10 (D.N.J. Feb. 9, 2011) (granting summary judgment under nearly identical circumstances). Accordingly, Defendants' motion is granted with respect to Counts One, Two and Eleven of the Complaint.

IV. **Conclusion**

For the reasons set forth above, and for other good cause shown, it is hereby ordered that Defendants' Motion for Summary Judgment is GRANTED with respect to Counts One through Eleven of the Complaint. Count Twelve is dismissed as moot. An appropriate order follows.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: 12/30/13